Timothy B. Strauch
Strauch Law Firm, PLLC
257 West Front Street, Suite A
Missoula, MT 59802
Telephone: (406) 532-2600
Facsimile: (406) 542-3332
tstrauch@strauchlawfirm.com

Donald L. Harris
Harris & Associates, PLLC
3936 Avenue B, Suite D
Billings, MT 59102
Telephone: (406) 294-2000
Facsimile: (406) 294-2010
don@dlharrislaw.com

Attorneys for JCCS and the Peters

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br>                     Plaintiff,<br>vs.<br><br>JUNKERMIER, CLARK, CAMPANELLA, STEVENS, P.C., DRAGGIN' Y CATTLE COMPANY, INC., and ROGER and CARRIE PETERS, individuals,<br>                     Defendants, | CV-14-83-GF-BMM |
| DRAGGIN' Y CATTLE COMPANY, INC., and ROGER and CARRIE PETERS,<br>                     Counter-Plaintiffs<br><br>vs.<br><br>NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br>                     Counter-Defendant | **ANSWER, COUNTERCLAIM, and JURY DEMAND** |

Defendants, Junkermier, Clark, Campanella, Stevens, P.C. (JCCS); Draggin'

Y Cattle Company, Inc. (Draggin' Y); and Roger and Carrie Peters (the Peters),

requesting trial by jury, for their Answer to the Complaint of Plaintiff New York

Marine and General Insurance Company (NYM), allege as follows:

## FIRST DEFENSE

The Complaint fails to state a claim upon which this Court may grant relief.

## SECOND DEFENSE

The Court lacks subject matter jurisdiction over this matter under the U.S.

Const., Art. III case or controversy requirement.  The case was not ripe at the time

of commencement.  Further, the Court should abstain from exercising jurisdiction

and/or stay this matter pending the outcome of parallel state court proceedings

under the *Wilton/Brillhart* and *Colorado River* doctrines.

## THIRD DEFENSE

The allegations and facts set forth within the Complaint are denied unless

expressly admitted herein.  If for any reason particular allegations or facts are not

directly addressed within the following answers, they are denied.  To the extent

that they may be interpreted as allegations, Defendants generally deny the captions

and sub-headings in the Complaint, which are argumentative and inaccurate.

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 2**

## FOURTH DEFENSE

Defendants answer the specific allegations of the Complaint as follows:

1.  Defendants admit the allegations of paragraph 1 only insofar as it is alleged that this is a civil action that includes claims for declaratory judgment and breach of contract.  Defendants deny all other allegations.

2.  Defendants admit the allegations of paragraphs 2, 3, 4, 5, and 6.  Defendant Addink was dismissed from this action without prejudice on December 10, 2014.  (Doc. 3)

3.  In answering paragraphs 7, 8, and 9, Defendants deny that this Court can and should properly exercise jurisdiction over this matter.

4.  Defendants admit the allegations of paragraph 10.

5.  Defendants admit the allegations of paragraphs 11, 12, 13, 14, and 15 only insofar as they are consistent with the language of the policy, which speaks for itself.  This is not a complete or accurate statement of the relevant policy language.

6.  Defendants admit the allegations of paragraph 16.

7.  Defendants admit the allegations of paragraph 17, only insofar as they are consistent with the language of the underlying complaint, which speaks for itself.  This is not a complete or accurate statement of the underlying action.

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 3**

8.     Defendants admit the allegations of paragraph 18 only insofar as it is alleged that JCCS tendered the claims asserted by Draggin' Y and the Peters to NYM, asking NYM to defend and indemnify JCCS pursuant to the subject insurance policy.  In response to that request, NYM stated that it would defend JCCS while reserving its right to contest coverage and making it clear that it was not admitting that its policy provided liability coverage for any of the underlying claims.

9.     Defendants admit the allegations of paragraph 19 only insofar as it is alleged that NYM retained G. Patrick HagEstad of Milodragovich, Dale, Steinbrenner, Nygren, PC to defend Addink and JCCS in the underlying action, while reserving NYM's right to contest coverage and making it clear that it was not admitting that its policy provided liability coverage for any of the underlying claims.

10.     Defendants admit the allegations of paragraph 20 only insofar as it is alleged that Addink and JCCS moved for summary judgment in the underlying action on a number of bases.  So had Draggin' Y and the Peters, including the liability of Addink and JCCS as a matter of law for damages in excess of policy limits.  Further, the Montana Supreme Court had already decided that all contract and negligence-based claims had been timely filed, and that the

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 4**

discovery of fraud-based claims was a jury issue. *Draggin' Y Cattle Co., Inc. v. Addink,* 2013 MT 319, 372 Mont. 334, 312 P.3d 451. Defendants deny there was any realistic possibility that the underlying case could have been dismissed given the law of the case established by the Montana Supreme Court.

11.     Defendants deny the allegations of paragraphs 21, 22, 23, 24, 25, and 26.

12.     In response to paragraph 27, Defendants re-allege and incorporate by reference their responses set forth in paragraphs 1-11 above as if fully set forth here.

13.     In response to paragraphs 28, 29 and 30, Defendants deny that this Court can and should properly exercise jurisdiction over this matter. Draggin' Y and the Peters have no claims, rights, or duties under the subject contract of insurance, other than in their capacity as assignees under the Assignment dated November 13, 2014. (Doc. 1-4, pp. 25-29)

14.     In response to paragraph 31, Defendants re-allege and incorporate by reference their responses set forth in paragraphs 1-13 above as if fully set forth here.

15.     Defendants deny the allegations of paragraphs 32, 33, 34, 35, and 36. Draggin' Y and the Peters have no claims, rights, or duties under the subject

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 5**

contract of insurance, other than in their capacity as assignees under the Assignment dated November 13, 2014.  (Doc. 1-4, pp. 25-29)

## FIFTH DEFENSE

NYM's claims are barred by the doctrines of waiver and estoppel.

## SIXTH DEFENSE

The state district court's decision that the $10,000,000 stipulated judgment is reasonable (Doc. 38-1) is res judicata, collateral estoppel, and binding on the parties and this Court.  It precludes one or more of NYM's claims and defenses in this case.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Defendants pray:

A.    That the Court dismiss NYM's claims and NYM take nothing;

B.    If the Court grants declaratory relief, that it grant such relief as requested in the following Counterclaim;

C.    For their attorney's fees and costs under the contract, or as otherwise permitted under Montana law; and

D.    For such other and further relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Defendants demand a jury trial as to all issues properly triable before a jury.

## COUNTERCLAIM

Draggin' Y and the Peters bring this Counterclaim only in their capacity as assignees under the Assignment dated November 13, 2014.  (Doc. 1-4, pp. 25-29) They assert this Court cannot and should not properly exercise jurisdiction over this matter.  In the event that such jurisdiction can and should be properly exercised, requesting trial by jury, they allege as follows:

### Allegations Common to All Counts

1. JCCS purchased a $2 million liability insurance policy from NYM.  (Doc. 1-1)  The policy included an endorsement that stated that "defense expenses shall not reduce the limit of liability."  (*Id.*, p. 11)  Under its policy, NYM had the sole right to appoint defense counsel for JCCS and to defend against the claims of Draggin' Y and the Peters.  (*Id.*, p. 14)  With regard to settlement, if JCCS refused to consent to a settlement recommended by NYM, NYM could reduce its liability limit to the amount of the recommended settlement offer.  (*Id.*)  Conversely, JCCS could not settle without NYM's consent.  (*Id.,* p. 22)  Combined, these settlement provisions gave NYM complete control over how the underlying claims were defended

and settled.

2.      On February 15, 2012, Draggin' Y and the Peters filed a first amended

complaint against Larry Addink and JCCS in the case captioned *Draggin' Y*

*Cattle Company, Inc., et al. v. Addink, et al.,* Montana Eighteenth Judicial

District Court Case No. DV-11-87A (the "underlying action").  (Doc. 1-2)

The amended complaint alleged claims for professional negligence (Count

One), breach of fiduciary duty (Count Two), breach of contract (Count

Three), breach of the implied covenant of good faith and fair dealing (Count

Four), and for misrepresentation, deceit, and constructive fraud (Count

Five).  The amended complaint also sought punitive damages (Count Six).

3.      By letter dated March 8, 2012, NYM stated that it would continue defending

JCCS while reserving its right to contest coverage.  (Doc. 1-3)  NYM

specifically reserved its right to contest coverage for Count Five of the

amended complaint and for punitive damages, Count Six.  (*Id.,* pp. 3-4)

NYM also generally reserved its right to contest coverage for all other

claims:

NYMAGIC reserves the right to deny coverage based upon grounds other
than those expressly set forth herein and to supplement and/or to amend this
letter to address additional coverage issues as they may arise, based upon all
of the provisions, terms, conditions, exclusions, endorsements and
definitions contained in the NYMAGIC Policy and any additional facts that

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 8**

may come to the attention of NYMAGIC.  As such, the within discussion does not purport to be a comprehensive analysis of all potentially applicable coverage issues and policy provisions and mention of specific coverage issues or policy provisions herein does not negate the relevance of any others.

(*Id.,* p. 4)  Finally, NYM concluded its letter by stating, "Similarly, nothing herein or heretofore should be construed as an admission of coverage for liability by NYMAGIC." *(Id.)*  With this language, NYM made it clear that it was not admitting that its policy provided liability coverage for any of the underlying claims.

4.    The state district court originally granted summary judgment to Addink and JCCS, dismissing the case on the basis that all applicable limitations periods had expired.  The Montana Supreme Court reversed summary judgment.  It held that all contract and negligence-based claims had been timely filed, and that the discovery of fraud-based claims was a jury issue.  *Draggin' Y Cattle Co., Inc. v. Addink,* 2013 MT 319, 372 Mont. 334, 312 P.3d 451.

5.    On June 10, 2014, Draggin' Y and the Peters offered to settle their claims and release Addink and JCCS for the payment of JCCS's policy limits of $2 million.  (Doc. 9-5, pp. 40-43)  Both Addink and JCCS demanded that NYM pay policy limits, if necessary, to settle.  (*Id.,* pp. 45-48)  NYM offered only $100,000.00.  (*Id.,* pp. 50-52)  By then, Draggin' Y's financial losses alone

were about $12 million:  $4.2 million for tax liability damages and $7.9

million in lost profits from ranching operations.  Fearing an excess

judgment, Addink and JCCS then demanded that NYM either settle for

policy limits or agree to pay for any excess judgment that might be entered

against them.  (*Id.*, pp. 54-73)  NYM refused.  (*Id.*, pp.58-59)  NYM did not

comply with Addink's request for NYM's case evaluations.  (*Id.*, pp. 65-66).

6.    By letter dated November 11, 2014, NYM misrepresented to JCCS that its

policy limits were being eroded by defense expenses.  (Doc. 9-5, p. 75)  In

the same letter, NYM announced that it would not be sending a claims

representative with ultimate settlement authority to attend the November 12

settlement conference in person.

7.    Draggin' Y and the Peters, Addink and JCCS, and their counsel, all

personally attended and participated in a settlement conference in the

underlying action on November 12, 2014.  NYM's primary adjuster failed to

attend the mediation and participate in person, but instead participated only

by phone.  As indicated in the Settlement Conference Report, the case did

not settle.  (Doc. 5-1)

8.    After the November 12 settlement conference was unsuccessful, the parties

entered into a Settlement Agreement and Stipulation for Entry of Judgment

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 10**

for $10 million on November 13, 2014, which included, among other things, an Assignment made by Addink and JCCS of their rights, demands, actions, causes, and claims against NYM in favor of Draggin' Y and the Peters. (Doc. 1-4, pp. 25-29)

9.     As part of the settlement, Addink was dismissed with prejudice from the underlying action.  (Doc. 5-2)

10.    JCCS paid a $33,442.00 premium for $2 million in liability coverage for one year.  JCCS paid this premium so that NYM would pay up to $2 million to protect JCCS from liability claims covered under the policy.  Yet, at the time the parties entered into their stipulated judgment, NYM:

    a.     Had not admitted that any of the claims of Draggin' Y and the Peters against JCCS were covered by the policy;

    b.     Had misrepresented that JCCS' policy limits were being reduced by defense expenses;

    c.     Had not filed a declaratory judgment action to determine coverage;

    d.     Had failed to provide JCCS with its case evaluations;

    e.     Had refused to settle for policy limits despite the requests of JCCS and Addink that it do so;

    f.     Had refused to waive limits by agreeing to pay for any judgment in

excess of policy limits;

g.   Had refused to send its primary adjuster to personally attend the November 12th settlement conference; and

h.   Understood "that the Plaintiffs could wind up with a verdict far in excess of policy limits."

11.   NYM's strategy was two-fold:  first, refuse to settle and try the case on the chance that any verdict would be less than policy limits; and second, then file a declaratory judgment action to avoid coverage for any verdict. Without regard to the ruinous liability JCCS and Addink faced, NYM sought to gamble at the expense of JCCS and Addink.

12.   On November 20, 2014, the state district court entered orders scheduling a hearing to determine the reasonableness of the stipulated judgment in the underlying action.  (Doc. 5-3)

13.   On November 20, 2014, NYM filed the complaint in this matter.

14.   On December 5, 2014, NYM filed a motion to intervene in the underlying action to oppose the entry and challenge the reasonableness of the stipulated judgment.  (Doc. 5-4)

15.   On December 15, 2014, the state district court issued its Order allowing NYM to intervene in the underlying action, and denying NYM's motion to

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 12**

stay and motion for discovery.  (Doc. 9-1)

16.    The state district court held a reasonableness hearing on December 15, 2014.
       (Doc. 9-2)  At that hearing, Draggin' Y and the Peters presented testimony
       from Roger Peters, Bob Storey (their damages expert), and Mike Cok
       (Addink's personal counsel) to support the reasonableness of the $10 million
       stipulated judgment.  NYM appeared at the hearing through counsel and
       objected to the hearing.  NYM did not present any evidence or cross-
       examine any witnesses.  JCCS was represented by Tom Marra at the
       December 15 hearing.  Mr. Marra argued that the Court should find the
       stipulated judgment to be reasonable.

17.    At the December 15 hearing, Draggin' Y and the Peters filed their Cross-
       claim against NYM in the underlying action.  (Doc. 9-3)  Draggin' Y and the
       Peters filed their motion for summary judgment on their cross-claim against
       NYM in the underlying action.  (Docs. 9-4 and 9-5)  NYM filed a motion to
       dismiss.

18.    On March 5, 2015, the state district court issued its *Findings of Fact,
       Conclusions of Law and Order Finding Stipulated Settlement Amount
       Reasonable*.  (Doc. 33-1)  It subsequently entered the $10 million Judgment.
       (Doc. 38-1)

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 13**

19.     On June 5, 2015, the state district court entered an *Order of Dismissal of Cross-Claims.* (Doc. 45-1)  NYM then appealed the *Findings of Fact, Conclusions of Law and Order Finding Stipulated Settlement Amount Reasonable* and $10 million Judgment to the Montana Supreme Court. (Doc. 45-2)

20.     If affirmed by the Montana Supreme Court, the state district court's *Findings of Fact, Conclusions of Law and Order Finding Stipulated Settlement Amount Reasonable* and the $10 million Judgment are res judicata, binding on the parties and this Court, and entitled to full faith and credit and comity.  No part of the underlying litigation should be re-litigated in this matter.

21.     NYM never admitted or denied coverage for any of the underlying claims and had never filed a declaratory judgment action to determine coverage.

## COUNT ONE - DECLARATORY JUDGMENT

22.     All contentions and allegations contained in the preceding paragraphs are re-asserted and re-alleged as if set forth fully in this Count One.

23.     Under Montana law, it is well-established that an insurer is liable for an excess judgment or for a stipulated judgment in excess of policy limits where the insurer refuses to settle in bad faith.

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 14**

24.     In these circumstances, NYM's defense was illusory: it provided no

        protection to JCCS or Addink because it refused to acknowledge coverage

        and it never filed a declaratory judgment action to determine coverage.  For

        JCCS and Addink, there could be no meaningful protection without

        coverage.

25.     By reason of its conduct, NYM is estopped, and has waived its rights, to

        assert any claim or right under the contract of insurance, and to deny any

        duty, express or implied, under the contract of insurance and Montana law.

26.     An actual controversy exists between NYM and Draggin' Y and the Peters

        as assignees of Addink and JCCS regarding the duties and obligations that

        NYM owes under the subject policy and Montana law and its liability to pay

        the stipulated Judgment as alleged in this Counterclaim.  Pursuant to the

        Uniform Declaratory Judgments Act, section 27-8-201, MCA, and 28 U.S.C.

        § 2201, if it has subject matter jurisdiction at the time the Complaint in this

        action was filed, this Court has the power to resolve that conflict.

## COUNT TWO - BREACH OF CONTRACT

27.     All contentions and allegations contained in the preceding paragraphs are re-

        asserted and re-alleged as if set forth fully in this Count Two.

28.     Under the subject contract of insurance, NYM had control over the defense

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 15**

of the underlying claims, and a duty implied by Montana law to settle in good faith.

29. Under the subject contract of insurance, there was a special relationship implied by Montana law between NYM, as insurer, and Addink and JCCS, as insured.  As a result of that relationship, NYM owed JCCS and Addink a fiduciary duty of good faith to protect JCCS and Addink by using the $2 million in liability coverage, for which JCCS had paid, to settle the case.  As part of that duty, in determining whether to accept or reject offer of compromise of Draggin' Y and the Peters within policy limits, NYM was required, in good faith, to give at least equal consideration to the interests of the insured.  NYM also had a duty to be honest with its insureds and not to misrepresent facts and policy provisions.

30. Under the subject contract of insurance, if NYM believed any policy exclusion applied to the underlying claims, it had an obligation implied by Montana law to defend JCCS and Addink under a reservation of rights <u>and</u> seek a determination of coverage through a declaratory judgment action.

31. Under the subject contract of insurance, NYM had an obligation implied by Montana law to affirm or deny coverage for the underlying claims within a reasonable time after notice of the claims.

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 16**

32.   It was in the best interests of JCCS and Addink to accept the offer of

      Draggin' Y and the Peters to settle within policy limits.

33.   As a consequence of NYM's actions set forth in the incorporated

      paragraphs, JCCS and Addink were placed in a precarious position.  They

      faced imminent threat of summary judgment in excess of their $2 million

      liability limit.  At trial, they faced the possibility of a jury verdict greater

      than their $2 million policy limit or, even if within the limit, one that might

      not be covered.  Retained counsel and NYM understood "that the Plaintiffs

      could wind up with a verdict far in excess of policy limits."

34.   Under the facts circumstances alleged herein, JCCS and Addink had the

      right under Montana law to act reasonably to protect themselves from

      personal liability by entering into the settlement and assignment with the

      Peters and Draggin' Y.  Thus, JCCS and Addink did not breach any duty

      owed to NYM under the insurance contract.

35.   As alleged in the incorporated paragraphs, NYM breached the contract of

      insurance, including its obligations and duties implied under Montana law.

36.   By reason of its conduct, NYM is estopped, and has waived its rights, to

      assert any claim or right under the contract of insurance, and to deny any

      duty, express or implied, under the contract of insurance and Montana law.

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 17**

37.   As a result of NYM's breaches of its express and implied contractual duties, it is liable for damages caused to JCCS and Addink in the full amount of the $10 million Judgment, plus post-judgment interest at the statutory rate under Montana law, the claims for which have been validly assigned to Draggin' Y and the Peters.

## COUNT THREE - VIOLATION OF THE UNFAIR TRADE PRACTICES ACT

38.   All contentions and allegations contained in the preceding paragraphs are re-asserted and re-alleged as if set forth fully in this Count Three.

39.   NYM's acts and omissions constitute a violation of § 33-18-201(1), MCA, in that NYM misrepresented facts and policy provisions relating to the erosion of policy limits by defense costs.

40.   As a result of NYM's violation of the Unfair Trade Practices Act, it is liable for the damages it caused to JCCS and Addink in the full amount of the $10 million Judgment, plus post-judgment interest at the statutory rate under Montana law, and all additional compensatory damages, the claims for which have been validly assigned to Draggin' Y and the Peters.

41.   NYM acted in the knowledge of facts or intentional disregard of facts creating a high probability of injury to JCCS and Addink and: (a)

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 18**

deliberately proceeded to act in conscious or intentional disregard of the

high probability of injury to JCCS and Addink; or (b) deliberately proceeded

to act with indifference to the high probability of injury to JCCS and

Addink.  NYM's actions were willful, wanton, and reckless.  As a result,

NYM is liable for punitive damages under Montana law, the claims for

which have been validly assigned to Draggin' Y and the Peters.

WHEREFORE, having set forth its claims for relief, Counter-Plaintiffs pray:

A.    For a declaratory judgment establishing that NYM is liable to pay the $10

million Judgment including all post-judgement interest thereon under

Montana law;

B.    For judgment against NYM for all compensatory damages in an amount to

be determined by a jury at trial;

C.    For punitive damages in an amount to be determined by the jury;

D.    For pre- and post-judgment interest on all such amounts to the extent

permitted by law;

E.    For Counter-Plaintiffs' attorney's fees and costs incurred herein; and

F.    For such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Counter-Plaintiffs demand a jury trial as to all issues properly triable before

**ANSWER, COUNTERCLAIM, and JURY DEMAND - Page 19**

a jury.

Respectfully submitted this 8th day of June, 2015.

STRAUCH LAW FIRM, PLLC


By /s/  Timothy B. Strauch
    257 West Front Street, Suite A
    Missoula, MT  59802

HARRIS & ASSOCIATES, PLLC


By /s/  Donald L. Harris
    3936 Avenue B, Suite D
    Billings, MT  59102

Attorneys for Defendants and Counter-
Plaintiffs