Marshal Mickelson
Corette Black Carlson & Mickelson
129 W. Park Street, Suite 300
P.O. Box 509
Butte, MT 59703
PH : (406) 782-5800
FAX : (406)723-8919
Email : mick@cpklawmt.com
*(Attorneys for Non-Parties Thomas A. Marra and Kirk D. Evenson)*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>JUNKERMIER, CLARK, CAMPANELLA, STEVENS, P.C., DRAGGIN'Y CATTLE COMPANY, INC., and ROGER and CARRIE PETERS, individuals,<br><br>Defendants.<br><br>DRAGGIN'Y CATTLE COMPANY, INC. and ROGER and CARRIE PETERS,<br><br>Counter-Plaintiffs,<br><br>vs.<br><br>NEW YORK MARINE AND | No. CV-14-83-GF-BMM-JTJ<br><br><br><br>**NON-PARTIES THOMAS MARRA AND KIRK EVENSON'S BRIEF IN SUPPORT OF MOTION TO QUASH AMENDED SUBPOENAS TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION AND DOCUMENT REQUESTS, RULE 45 F.R.CIV.P.** |

| GENERAL INSURANCE COMPANY,  |  |
|---|---|
| Counter-Defendants. |  |

COME NOW Non-Parties Thomas A. Marra and Kirk D. Evenson, by and through their attorney Marshal Mickelson of Corette Black Carlson & Mickelson, and hereby present this brief in support of their motion for an order to quash the improper Amended Subpoenas and accompanying production of documents served by plaintiff New York Marine and General Insurance Company (NYM) on June 18, 2019. (Exhibit 1) Neither Marra nor Evenson are attorneys of record or named parties in the above-captioned action. Marra, Evenson & Levine, P.C. (MEL) is personal counsel for one of the named defendants Junkermier, Clark, Campanella, Stevens, P.C. (JCCS). This motion to quash is prompted by NYM's *Notices of Video Depositions* and *Amended Subpoenas to Testify at a Deposition in a Civil Action* together with an Attachment A to the noted *Amended Subpoenas*, Requests for Production of documents, numbered 1 through 9 (document requests). *Id.* The *Amended Subpoenas'* document requests are objectionable on multiple grounds.

First, the *Amended Subpoenas* and the document requests do not comport with this court's directives from the hearings held on December 5, 2018, and June 11, 2019. Second, the document requests require, inappropriately, the disclosures of privileged and other protected matters under Montana law. The

document requests have been served on private attorneys for one of the parties in the litigation, who are not attorneys of record in the litigation. The files sought are protected by the attorney-client privilege, as well as attorney work product doctrine. Third, there is insufficient time to comply with the document requests given the extent of the requests and the amount of time and expense required to provide an appropriate response under the law.

Fourth, NYM has already placed an undue burden on non-parties Marra and Evenson as they have generated thousands of pages documents in compliance with this court's directive from the hearing of December 5, 2018, and provided those documents to NYM in several formats. MEL has never been compensated for the significant amount of time spent in complying with this court's directive and previous orders stemming from the issues giving rise to the *Amended Subpoenas* and accompanying document requests since November 2015. An additional burden would be placed upon Marra and Evenson with respect to time and expense for responding to the improper subpoenas.

Marra and Evenson have moved this court to quash the *Amended Subpoenas* and issue an Order that the subpoenas document requests be limited to those documents that have already been produced to NYM pursuant to this court's directives of December 5, 2018 and June 11, 2019. Further, it is requested that said Order require NYM to pay for all attorney fees and costs that have been

previously incurred and will be incurred in the future with respect to the *Amended Subpoenas* and this *Motion to Quash*. As noted in the *Motion*, counsel for Marra and Evenson has attempted to confer with counsel for NYM regarding these issues but as of the date of the filing of this *Motion to Quash* and supporting *Brief,* there has not been progress on the issues and counsel for NYM has advised that it objects to this *Motion*. (Exhibits 2-5)

## PROCEDURAL BACKGROUND

Back on November 16, 2015, Marra and Evenson received *Subpoenas* with accompanying document requests and *Notices of Deposition* from local counsel for NYM. (Docs. 97, 98 at Exhibits A, B.) As a result of the *Subpoenas*, Marra and Evenson, after first attempting to confer with NYM, filed and served a *Motion to Quash Subpoenas to Testify at a Deposition in a Civil Action and Document Requests, Rule 45 F.R.Civ.P.* and *Non-Parties Brief in Support of Motion to Quash Subpoenas to Testify at a Deposition in a Civil Action and Document Requests, Rule 45 F.R.Civ.P. Id.* A review of the document requests that accompanied the November 2015 *Subpoenas* will reveal that those document requests are virtually identical to those that accompanied the *Subpoenas* issued by NYM dated April 17, 2019. (Exhibit 7; Docs. 97, 98.) The *Subpoenas* from 2015, together with their document requests, became the subject of the referenced *Motion to Quash* in

November 2015 and subsequent hearings regarding the extent to which the MEL file regarding its client JCCS would be required to be produced.

On January 7, 2016, the Honorable John Johnston, United States Magistrate Judge, issued an *Order* that a hearing would be held on February 3, 2016, to address the referenced November 23, 2015 *Non-Parties' Motion to Quash Subpoenas to Testify at a Deposition in a Civil Action and Document Requests* and defendant JCCS was to submit to the court a copy of the documents identified in privilege logs of July 23, 2015 and December 2, 2015, by January 15, 2016. (Doc 153) A *Notice of Compliance* was filed with the court regarding the January 7, 2016, *Order* on January 14, 2016.

After the hearing on February 3, 2016, United States Magistrate Judge John Johnston issued an *Order* which provided:

> In relation to non-parties Thomas Marra and Kirk Evenson's *Motion to Quash Subpoenas to Testify at a Deposition in a Civil Action and Document Requests, Rule 45 F.R.Civ.P.* (Doc. 97), Marra, Evenson and Bell, P.C. must prepare a privilege log for any document in its file through November 13, 2014, and submit the privilege log and accompanying documents to the Court for an *in camera* review by February 19, 2016. Plaintiffs must pay the reasonable cost and expenses associated with preparing the privilege log. (Doc. 167, pages 2 through 3)

Pursuant to this referenced *Order*, a Notice of Compliance was recorded with the Court on February 19, 2016 (Doc. 183).

On November 8, 2018, this court issued an *Order* for the purposes of conducting a hearing on the following Motions on December 5, 2018:

1. Motion for Protective Order, Doc. 99
2. Motion for Protective Order, Doc. 121;
3. Motion to Compel, Doc. 174;
4. Motion to Compel, Doc. 177;
5. Motion for Request for Judicial Notice, Doc. 259;
6. Motion to Dismiss, Doc. 260; and,
7. Motion to Certify, Doc. 262

(Doc. 272)

The Court *Order* referenced above does not contain any mention of the *Non-Parties Motion to Quash Subpoenas to Testify at a Deposition in a Civil Action and Document Requests, Rule 45 F.R.Civ.P.* (Doc. 97) which had been the subject of the Honorable John Johnston, United States Magistrate Judge's Order of February 5, 2016.[1] Nonetheless, the court at the December 5, 2018, hearing directed non-party Marra as follows:

> The Court: With regard to Mr. HagEstead, the scope of the Order should go until the time Mr. HagEstead stopped representing JCCS, which I believe we had some agreement, was June of 2015. So with regard to Mr. Marra's file it would be up until that date, whatever the date Mr. HagEstead ceased his representation of JCCS. (T.R. at pages 92-93)

> The Court: Oh, you know what? I forgot to rule on the motions on the documents, privilege with regard to the board minutes. I'm going to order the board minutes redacted. Produce those that relate to anything involving this litigation. There are some personal

---

[1] NYM did not file specific written objections to this *Order* within 14 days after it was issued which means those objections are waived. *Rule 72(a), F.R. Civ.P.*

information in there, matters unrelated to this case and parties unrelated to this case. What I would do is...

The Court: Well, in consultation with you - - well, he's got to redact those, Mr. Marra. My intent is any personal information or what you would call trade-secret type information is to be redacted. And make sure you disclose any - - each one contains a one-sentence update on this litigation. So if you could just make sure - - that's the information I want reported.

Mr. Marra: In the form of a privilege log, for example?

The Court: No. I think that what I would do is make those redactions. Provide them to opposing counsel. *Id.* at 95-96

In compliance with this court's directive from the December 5, 2018, hearing, MEL proceeded to produce well over three thousand pages of documents from its files to NYM from the inception of retention by JCCS to the termination of Mr. HagEstad by JCCS, September 29, 2015, in a searchable Adobe Acrobat Reader format. In addition, in compliance with this court's directive, NYM was provided with the redacted JCCS shareholder minutes. NYM, dissatisfied with the formatting of the records that were provided, requested the documents be produced from both the electronic and hard copy files of MEL and these were provided to NYM with requested clarifications on February 13, 2019, and again on February 20, 2019. (Exhibits 5, 6; correspondence (without any enclosures) dated February 13, 2019 and February 20, 2019.)

As noted above, the NYM document requests accompanying its initial *Subpoenas* back in November 2015 are virtually identical to those issued with its

*Subpoenas* of April 17, 2019. The depositions that were scheduled and the accompanying subpoenas were again vacated. Then on June 11, 2019, this court held another hearing wherein it again reiterated its directive as to the limitations being placed on the disclosure of the communications, written or otherwise, between MEL and JCCS after September 29, 2015:

> THE COURT: All right. With regard to this motion to compel. So we're okay on Evanson and Marra. We're going to depose -- supplemental depositions of those two to inquire into their communications with their clients. Is that correct?
>
> MR. GOODMAN: Yes, sir.
>
> MR. STRAUCH: That they're going to be deposed on the communications with their clients?
>
> THE COURT: Yes.
>
> MR. STRAUCH: I understand that for the period up until September of '15.
>
> THE COURT: Yes, until JCCS terminated Mr. HagEstad.

Transcript of Hearing at 65.

Clearly, the scope of the depositions to be taken are limited to communications between counsel and their clients before Mr. HagEstad's termination as counsel for Junkermier, Clark, Campanella, and Stevens (JCCS) in September 2015.

Nonetheless, NYM issued the *Amended Subpoenas* requesting documents from MEL after September 29, 2015, despite the fact that Mr. Goodman, NYM's

counsel, represented to this court that he understood the deadline and limitations the court imposed on any such discovery:

> THE COURT: Okay. That's one area where I want to talk about today. After Mr. HagEstad's relieved of his duties, and the settlement has already been had, why shouldn't attorney-client privilege apply to all communications between Mr. Strauch, Mr. Marra, Mr. Koch, (sic) anyone else who was involved in that process?
>
> MR. GOODMAN: After Mr. HagEstad had been relieved of his duties?
>
> THE COURT: Yes.
>
> MR. GOODMAN: We're not quarreling with Your Honor's deadline of the period, we're just saying we should be able to inquire as to communications between Draggin'Y and the Peters and their counsel and JCCS and their counsel in the period before Mr. HagEstad is relieved of his duties.

Transcript of Hearing at 5.

The current *Amended Subpoenas*, with the accompanying document requests, are contrary to this court's specific directive regarding the documents that are required to be produced from the MEL file, date of representation through termination of HagEstad. Instead of complying with the specific directive, NYM has subpoenaed all file documents "without limitation." (Exhibit 1 at "Attachment A"). The purpose of this *Motion to Quash* is to require NYM to comply with this court's directive regarding the documents that are required to be produced for the purposes of the depositions of Marra and Evenson, should those go forward on July 29 and 30, 2019, or sometime in the future. The files produced by MEL have far exceeded those required to be produced pursuant to United States Magistrate

Judge John Johnston's *Order* of February 6, 2016 and the limitations placed on the attorney-client privilege and attorney work product under Montana law. Further erosion of the attorney-client privilege and the work product doctrine should be avoided by the issuance of an Order quashing NYM's latest *Amended Subpoenas* and accompanying document requests.

## DISCUSSION

A person subpoenaed to produce documents or things or to permit an inspection may serve an objection to all or part of the subpoena within 14 days after service of the subpoena (or before the time designated in the subpoena, if sooner). *McCoy, the Southwest Co.*, 211 F.R.D. 381, 384 (C.D. Cal. 2002). Objections to subpoenas are customarily made by letter. *In re DG Acquisition Corp.*, 151 Fed 3rd 75, 81(2d Cir. 1998). By letters dated April 23, 2019, and June 26, 2019, MEL submitted the requisite letters and stated the grounds for their objections. As no proper response has been received, a motion to quash is appropriate and timely. *Rule 45(d)(2)(B), F.R.Civ.P.*

### 1. The *Subpoenas*' document requests do not comport with this court's directive from the hearing of December 5, 2018.

As set out above, MEL complied with United States Magistrate Judge's *Order* of February 5, 2016, and provided the documentation and privilege logs. Doc. 167. MEL also complied with this court's directive at the hearings on December 5, 2018, and June 11, 2019, which explicitly limited the documentation

to be produced to the time frame of their initial representation of JCCS as private counsel in this matter, up until the date that Mr. Patrick HagEstead, counsel appointed by NYM, ceased his representation of JCCS on September 29, 2015. (T.R. December 5, 2018, at pages 92-93; T.R. June 11, 2019, at pages 5, 9, 65) As Marra, Evenson & Levine, P.C. were already required to disclose beyond what was already required under the facts and law applicable to this case, the latest *Amended Subpoenas* and document requests from NYM demanding "without limitation" all records and files in their possession not only violates this court's directives but the law regarding attorney-client privilege and the work product doctrine.

### 2. The document requests require, inappropriately, the disclosure of privileged and other protected matters under Montana law.

As this court's jurisdiction is based on the parties' diversity of citizenship, the law of the forum state, Montana, governs with regard to the attorney-client privilege and the work product doctrine. *Saypo Cattle Co. v. Rmf Deep Creek, LLC,* 2012 WL112887976, *2 (D.C. Mont.) Montana law, as set out in *Nelson v. City of Billings,* 2018 MT 36 ¶¶ 23-30, 390 Mont. 290, 412 P.3d 1058; *Draggin'y Cattle Co. v Addink.*, 2013 Mt 319, ¶ 40, 372 Mont. 334, 312 P.3d 451 and *State ex rel U.S. Fidelity and Guar. Co. v. Montana Second Judicial Dist. Court*, 240 Mont. 5, 10-13, 783 P.2d 911, 914-915 (1989) is based on *Upjohn Co. v U.S.* 449 U.S. 383 (1981) and it's progeny *Admiral Ins. Co. v U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486 (9th Cir. 1989).

In *Nelson,* the Montana Supreme Court held:

**The inviolate nature of these privileges is a cornerstone of our judicial system, reflecting "the policy of the law to encourage confidence and to preserve it inviolate."** Section 26-1-801, MCA; *see Hickman,* 329 U.S. at 511, 67 S.Ct. at 393. (Emphasis supplied)

The Montana Supreme Court, citing *Upjohn* and *Admiral,* held:

The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law. (Citation omitted). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy depends upon the lawyer's being fully informed by the client. As we stated last Term. . . "The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." And . . . we recognize the purpose of the privilege to be "to encourage clients to make full disclosure to their attorneys." This rationale for the privilege has long been recognized by the Court, see *Hunt v. Blackburn,* 128 U.S. 464, 470 [9 S.Ct. 125, 127, 32 L.Ed. 488] (1888) (privilege "is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure").

In Montana this privilege has been codified in §26-1-803, MCA, which provides:

(1) An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given to the client in the course of professional employment.

(2) A client cannot, except voluntarily, be examined as to any communication made by him to his attorney or the advice given to him by his attorney in the course of the attorney's professional employment....

A recent case from the Ninth Circuit, *Admiral Ins. v. U.S. Dist. Court for Dist. of Ariz.* (9th Cir. 1989), 881 F.2d 1486, discussed at length the discoverability of attorney-client communications . . .

(1) Where legal advice of any kind is sought
(2) from a professional legal advisor in his capacity as such,
(3) the communications relating to that purpose,
(4) made in confidence
(5) by the client,
(6) are at this instance permanently protected
(7) from disclosure by himself or by the legal adviser,
(8) unless the protection be waived....

**While the work-product rule protects a client's investment in his attorney's labor to prevent unfair exploitation, the privilege protects communications between client and counsel to encourage the client to be forthcoming with his attorney so that appropriate legal advice can be offered.** (Emphasis supplied)...

*Admiral Ins.* 881 F.2d at 1494.

In summary, *Admiral Ins.* held that the attorney-client privilege is to be distinguished from the protection given attorney work product. Whereas a showing of need may overcome the immunity given to work product, no showing of need can be invoked to overcome the privilege. It noted the policy underlying the privilege which is to encourage the client to be open and frank with the attorney, and to enable the attorney to provide the best possible legal advice and to encourage the client to act in accordance with the law. While recognizing that the privilege denies access to these communications, the court held that the legal system's need for the privilege outweighs an asserted need for the information. We conclude that the reasoning of the Ninth Circuit in *Admiral Ins.* is compelling and correct. We therefore adopt its reasoning....

As stated by the *Admiral Ins.* court, the exception urged by plaintiff would either "destroy the privilege or render it so tenuous and uncertain that it would be 'little better than no privilege at all.'

*Id.* at 10-12, 914-15.

When *Nelson* and *State ex rel U.S. Fidelity and Guar. Co.* are applied to NYM's document demands, together with this court's directives from the December 5, 2018, and June 11, 2019, hearings, it is clear that those "without limitations" document demands are inconsistent with the "inviolate" protections of the attorney-client privilege and the attorney work product doctrine. As it is uncontroverted that NYM has been provided directly, and throughout the underlying litigation, the file of Milodragovich/HagEstad and that it has received the JCCS file of Milodragovich/HagEstad during the course of the discovery, NYM cannot justify a compelling need to further violate the attorney-client privilege and work product doctrine. NYM cannot legitimately contend that it is unable to reasonably assess the basis for JCCS' determination to confess judgment that was previously noted to this court. If the thousands of documents in NYM's possession are insufficient for it to understand what transpired in the underlying case, NYM should simply dismiss this action.

### 3. Time to comply.

MEL contends there has been insufficient time provided to comply with the *Amended Subpoenas*' document requests, particularly in light of the objectionable nature of the requests. Given that the document requests are demanding privileged documents, subject to the attorney-client privilege and work product doctrine, there

is insufficient time to address the basis for each objection as it pertains to each document. Further, given the nature and the extent of the requests, MEL cannot provide such documentation and they cannot set out the basis for each objection to each document in a privilege log in the time allotted.

### 4. Undue burden.

Rule 45(d)(3)(A)(iv) provides that a subpoena must be quashed if it subjects the recipient to undue burden. *Mount Hope Church v. Bash Back!*, 705 F. 3d 418 (9th Cir. 2012). The noted provision of Rule 45 may be used as justification for imposing the non-party's expenses on the party issuing the subpoena to cure the undue burden on the non-party. *Medical Components, Inc. v. Classic Medical, Inc.*, 210 F. R. D. 175, 179 (M.D. N.C. 2002). NYM does not have a substantial need for the privileged and confidential files of MEL, nor can one be reasonably shown in light of what it already possesses. Any requirement for compliance with any production or a privilege log must include the condition that the serving party, NYM, compensate the recipients. *Id.; Legal Voice v. Stormans Inc.*, 757 F.3d 1015 (9th Cir. 2014); *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1183-84 (9th Cir. 2013); *Ott v. City of Milwaukee*, 682 F.3d 552, 554-55 (7th Cir. 2012). The requirements for payment would be consistent with the February 5, 2016 *Order* from the United States Magistrate Judge, John Johnston. Doc. 167 at page 3.

## CONCLUSION AND RELIEF SOUGHT

For the reasons set out above, non-party Marra and Evenson request that this court grant their Motion to Quash the improper *Amended Subpoenas* and the accompanying document requests of NYM. MEL has completely complied with the requirements imposed on them by the United States Magistrate Judge John Johnston, as well as this court's specific directives from the December 5, 2018, and June 11, 2019, hearings. The *Amended Subpoenas* and document requests of NYM, with their "without limitation" demands, far exceed the parameters established by the pre-trial processes noted above and the applicable law. MEL request that the NYM *Amended Subpoenas* and accompanying document requests be quashed. NYM should also be required to pay for the previous production of documents and privilege logs (as ordered by United States Magistrate Judge John Johnston), as well as the attorney fees and costs for having to address the non-compliant NYM *Amended Subpoenas* and document requests.

DATED this 16th day of July, 2019.

CORETTE BLACK CARLSON & MICKELSON

By /s/ [signature]
P.O. Box 509
Butte, MT 59701
Attorneys for Non-Parties
Thomas A. Marra and Kirk D. Evenson

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was duly served upon counsel of record at their address or addresses this 16th day of July, 2019.

Gary M. Zadick
UGRIN, ALEXANDER, ZADICK & HIGGINS, P.C.
#2 Railroad Square, Suite B
P.O. Box 1746
Great Falls, MT 59403

Dave Paoli
PAOLI LAW FIRM
257 W Front St Suite A
Missoula, MT 59802-4351

Timothy B. Strauch
STRAUCH LAW FIRM, PLLC
257 West Front Street, Suite A
Missoula, MT 59802

Mark C. Goodman (*pro hac vice*)
Brandon P. Rainey (*pro hac vice*)
HOGAN LOVELLS US LLP
3 Embarcadero Center, 15th Floor
San Francisco, CA 94111

CORETTE BLACK CARLSON & MICKELSON
By_____
P.O. Box 509
Butte, MT 59701

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the requirements of Local Rule 7.1(d)(2). The total word count in the brief is 3,685 words, excluding

the caption and certificates of service and compliance. The undersigned relies on the word count of the word processing system used to prepare this brief.

DATED this 16th day of July, 2019.

CORETTE BLACK CARLSON & MICKELSON

By _____
P.O. Box 509
Butte, MT 59701