Mark C. Goodman (*pro hac vice*)
BAKER McKENZIE LLP
2 Embarcadero Center, Suite 1100
San Francisco, CA  94111
Tel.:  (415) 576-3000
Fax:  (415) 576-3099

Gary M. Zadick (MSBN 1686)
Jordan Y. Crosby (MSBN 7474)
UGRIN ALEXANDER ZADICK, P.C.
#2 Railroad Square, Suite B
Post Office Box 1746
Great Falls, MT 59403
Tel.:  (406) 771-0007
Fax:  (406) 452-9360

Attorneys for Plaintiff and Third-Party Defendant
NEW YORK MARINE AND GENERAL
INSURANCE COMPANY

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA - GREAT FALLS DIVISION

| | |
|---|---|
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, <br>     Plaintiff, <br> vs. <br> JUNKERMIER, CLARK, CAMPANELLA, STEVENS, P.C., DRAGGIN' Y CATTLE COMPANY, INC. and ROGER and CARRIE PETERS, <br>     Defendants. | Case No. 4:14-CV-00083-BMM <br><br> **NEW YORK MARINE'S OBJECTION TO THE MARRA FIRM'S REQUEST FOR COSTS AND FEES** <br><br> Before:  Judge Brian Morris <br> Date of Trial:  March 9, 2020 |
| DRAGGIN' Y CATTLE COMPANY, and ROGER and CARRIE PETERS, <br>     Plaintiffs, <br> /// <br> vs. <br> JUNKERMIER, CLARK, CAMPANELLA, STEVENS, P.C., <br>     Defendant/Third-Party Plaintiff, | Case No. CV-19-00034-BU-SEH (Consolidated) |

vs.

NEW YORK MARINE AND GENERAL
INSURANCE COMPANY,
     Intervenor/Third-Party Defendant.

## I.   INTRODUCTION

While the Court previously indicated that it would consider apportioning to New York Marine some amount of the cost of the Marra firm's production of documents in this case, the Marra firm is not entitled to such cost shifting under the federal rules or the equities of the case.  Had the Marra firm simply agreed to produce documents and then actually produced all responsive documents in response to the subpoenas served by New York Marine, there might be a basis on which to find that New York Marine should bear some portion of the expense to make that production.  But that is not what happened in this case.

Instead, New York Marine was forced to incur significant expense simply to get the Marra firm to produce responsive information, having to bring a motion to compel and having to thereafter oppose motions to quash.  JCCS and the Marra firm even tried to appeal this Court's rulings compelling production of documents and a privilege log -- hardly controversial rulings -- to the Ninth Circuit.  Most significantly, the Marra firm still has not produced all documents responsive to the subpoenas, requiring New York Marine to incur still further legal expense to simply get the Marra firm to do what it should have done years ago.  On top of all

of that, the Marra firm's Proof of Costs evidences excessive fees, including an attempt to run up the expenses it is seeking here by using attorneys and other timekeepers to "deliver" documents and complete other ministerial tasks that should have been assigned to clerical staff that do not have a billable rate.  As just one example, the Marra firm used (and is asking New York Marine to pay for) a paralegal to print documents for 72 hours, rather than using a more economic means to conduct such a task, such as a copy service or firm personnel that does not have an hourly rate.

New York Marine should not be required to pay the excessive costs and fees the Marra firm seeks for its incomplete document production and privilege log, a production that indicates an extensive number of improperly withheld documents and otherwise fails to provide information sufficient to assess the privileges asserted.  The request that New York Marine pay these expenses, much like the Marra firm's resistance to the subpoenas and to the Court's order to produce non-privileged documents and a privilege log, is not reasonable in light of the evidence provided in support of the costs or when balanced against the substantial expenses New York Marine has already incurred as a result of the Marra firm's conduct. Cost-shifting is also inappropriate where the nonparty has a clear economic interest in the outcome of the litigation, as the Marra firm -- counsel of record for

defendant JCCS -- obviously does here.  The Court should therefore deny the

Marra firm's requests for costs and fees in its entirety.

## II.    DISCUSSION

### A. The Applicable Legal Standard

The cost-shifting rule provides that a district court's order compelling

compliance with a subpoena "must protect a person who is neither a party nor a

party's officer from significant expense resulting from compliance."  Fed. R. Civil

P. 45(d)(2)(B)(ii).  In determining what counts as an expense, "[t]he touchstone is

whether the expense 'results from compliance' with the court's order compelling

production."  *United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 536 (C.D. Cal.

2014), *citing Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013).  It

is the "nonparties' burden to demonstrate that the costs are reasonable and resulted

from compliance with the Court's order."  *Id.* at 537.

### B. The Costs Are Not a Result Of Complying With The Court's Order

The Marra firm's expenses were not incurred "in compliance" with the

subpoenas or the Court's order because it is still withholding non-privileged

documents and provided a privilege log that does not provide enough detail to

assess the privileges asserted for every entry.  Unfortunately, New York Marine

will be once again forced to incur additional costs to ask the Court to enforce its

prior order because the Marra firm has ignored New York Marine's request that it

rectify both of these issues and, thus, has still not produced all of the information in its possession, custody or control that is responsive to the subpoenas.  The Marra firm states in its privilege log that documents have been withheld pursuant to "the attorney-client privilege, the attorney work product doctrine, the settlement or mediation privilege, the joint defense or common interest doctrines or by any other applicable privilege, immunity or protective doctrine all of which have been noted and disclosed on the privilege log filed herewith."  (Dkt. 412 at 3.)  Every entry in the log lists attorney-client and work product as the bases for withholding each document but the log does not demonstrate why privilege has not been waived with respect to communications with third parties.

Significantly, a majority of the log entries involve communications between JCCS, counsel for Draggin' Y and counsel for Larry Addink nearly a year after Mr. Addink had been dismissed with prejudice in the state court action but while that action was still pending between Draggin' Y and JCCS.  Under Montana law, JCCS has waived privilege with respect to all documents and communications shared with opposing counsel and other third parties.  *See, e.g., In re Marriage of Perry*, 2013 MT 6, ¶ 38 ("[A] person upon whom [Montana law] confer[s] a privilege against disclosure waives the privilege if the person . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter"), *citing* Mont. R. Evid. 503(a).

At the September 10 hearing, counsel for the Marra firm stated that all communications between JCCS and counsel for Draggin' Y are privileged because "they both represent JCCS." (Dkt. 380 at 52:7-11.) This was an incorrect characterization of the law. JCCS and Draggin' Y remained opposing parties in the state court action until that court approved the stipulated judgment on June 17, 2019, because they stipulated that they would proceed to trial against each other should the judgment not be approved. (Dkt. 1-4 at ¶14.) Again, no attorney-client privilege attaches to opposing parties. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (disclosure of privileged communications to opposing counsel constitutes a waiver of the privilege "as to communications about the matter actually disclosed"), *citing Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981); *cf. United States v. Plache*, 913 F.2d 1375, 1379-80 (9th Cir. 1990) (waiver of attorney-client privilege based on disclosure to opposing counsel despite the claim that the disclosing party was tricked into waiver because even "'inadvertence' of disclosure does not as a matter of law prevent the occurrence of waiver"). Moreover, communications between settling parties seeking approval of a stipulated judgment are not privileged by virtue of the "common interest" of enforcing a stipulated judgment at the insurer's expense. *See, e.g., In re Cushman*, No. PR 17-0665, 2019 Mont. LEXIS 382, at *13-14 (Aug. 20, 2019) (disqualifying counsel who appeared on behalf of both insured and

claimant after the parties executed a confessed judgment, covenant not to enforce

and assignment of rights against the insurer as a conflict of interest under Montana

Rule of Professional Conduct 1.7 based, in part, on the district court's finding that

the insured "actively colluded with [the claimant] . . . by working directly with [the

claimant's] attorneys and experts to create evidence in [the claimant's] favor that

would increase [the claimant's] damages claim, and by asserting privilege over

communications between [the claimant] and [the insured] under the common

interest doctrine"), *citing Charter Oak Fire Ins. Co. v. Interstate Mech., Inc.*, 958

F. Supp. 2d 1188, 1204 (D. Or. 2013), *vacated on other grounds*.  The Marra firm

cannot shift its costs for producing some documents while simultaneously defying

its obligation to comply with the order by withholding responsive documents.

    In addition to including documents on its privilege log that are plainly not

privileged, the Marra firm failed to provide sufficient facts to support various

assertions of privilege.  For example, each individual included on communications

or other documents is identified on the log only by (presumably) last name,

without providing information regarding their relationship to JCCS and how

privilege was created and preserved.  (Dkt. 412)  With respect to both attorney-

client and work product claims, the party resisting discovery has the burden of

establishing the right to withhold documents.  *See, e.g., United States v. Union

Pacific Railroad Co.*, 2007 U.S. Dist. LEXIS 40178 *3 (E.D. Cal. 2007) ("When a

party withholds information otherwise discoverable under these rules by claiming that it is privileged . . . the party shall make the claim expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection"). Accordingly, a "privilege log should identify each document and the individuals who were parties to the communications, providing *sufficient detail* to permit a judgment as to whether the document is at least potentially protected from disclosure . . . [and] *other required information*, such as the relationship between … individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony." *Kephart v. Nat'l Union Fire Ins., Co.*, 2007 U.S. Dist. LEXIS 56354, at *5-6 (D. Mont. Aug. 2, 2007) (emphasis added), *citing United States v. Construction Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).

If "the party invoking the privilege does not provide sufficient detail to demonstrate the fulfillment of all the legal requirements for application of the privilege, his claim will be rejected." *Id.* at *6-7.  Because one cannot assess the privileges asserted here, the privilege log does not comply with the Court's order and the Marra firm is not entitled to shift costs in preparing the log under Rule 45.

## C. The Costs Are Not "Significant" Under Rule 45

The second prong of the cost-shifting inquiry requires Courts to determine whether the non-party's expenses are significant in the context of the case. *McGraw-Hill*, 302 F.R.D. at 536 ("[N]either the Federal Rules nor the Ninth Circuit has defined 'significant expenses,' which is a term that readily lends itself to myriad interpretations depending on the circumstances of a particular case"); *see also CallWave Communs., Inc. v. WaveMarket, Inc.*, 2014 U.S. Dist. LEXIS 88073, at *9 (N.D. Cal. June 26, 2014) ("What constitutes a 'significant' cost is at the discretion of the district court . . . if the subpoena imposes significant expense on the non-party, the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant'"). In making this determination, courts in the Ninth Circuit consider the non-party's interest in the litigation and financial ability to bear the expenses.  *See, e.g., Valcor Eng'g Corp. v. Parker Hannifin Corp.*, 2018 U.S. Dist. LEXIS 142120, at *5-7 (C.D. Cal. July 12, 2018) ("Rule [45] is aimed at protecting persons who are disinterested, and thus have little to gain from their outlays in compliance cost . . . The Rule was meant to protect those who are powerless to control the scope of litigation and discovery, and should [therefore] not be forced to subsidize an unreasonable share of the costs of a litigation that does not concern them")

(internal quotations and citations omitted); *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277, 281 (N.D. Cal. 2017) (same).

The Marra firm's substantial interest in this litigation is undeniable, as it has represented JCCS in both this action and the now-consolidated state action for over five years and JCCS is the holder of the privilege that the Marra firm asserts in the privilege log.  The Marra firm is not the disinterested party that Rule 45 is designed to protect.  *See Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, 2018 U.S. Dist. LEXIS 100158, at *19 (E.D. Cal. June 13, 2018) ("Fee shifting is not appropriate here because [the nonparty], while a third party, had a business relationship with the parties that renders it 'interested' for the purposes of determining production cost allocation"); *In re Intel Corp.*, 2018 U.S. Dist. LEXIS 30757, at *17 (N.D. Cal. Feb. 23, 2018) ("[G]iven [the non-party's] financial interest in the underlying litigation, the Court declines to shift any costs of compliance").

In addition to its vested interest in this litigation, the Marra firm has not provided any evidence of its inability to the pay the costs it seeks.  *See Hyundai Motor Am., Inc. v. Pinnacle Grp., LLC*, 2016 U.S. Dist. LEXIS 184742, at *3 (C.D. Cal. Apr. 20, 2016) (denying motion to shift costs where the nonparty was not entirely disinterested and failed to provide any financial information that would enable the court to find that the requested costs were significant).  Although New

York Marine is not privy to the information, the Marra firm's filing of multiple

motions to quash and using an outside law firm (retained by JCCS) to draft an

emergency motion to stay and petition for writ of mandamus -- all to resist

complying with the subpoenas and this Court's order requiring the Marra firm to

produce documents and a privilege log -- indicate that the relative expenses

associated with its production and privilege log are not significant.  The Court

should therefore deny the Marra firm's request for fees on these grounds as well.

### D. The Requested Expenses Are Not Reasonable

The Court should reject the Marra firm's inappropriate request to shift costs

that have been "paid by JCCS" because the cost-shifting rule under Rule 45 only

applies to non-parties.  *See* Fed. R. Civ. P. 45(d)(2)(B)(ii).  The Marra firm lists

nearly a dozen "disbursements" that JCCS has paid related to scanning, copying

and bates stamping documents, expenses totaling $7,097.15.  (Dkt. 423-1 at 5-6.)

JCCS cannot recover costs and fees paid to its law firm under the guise of non-

party expenses because JCCS is a party to this action.

The Marra firm seeks $30,541.50 for its purported time spent preparing the

production and privilege log based at approximately 190 hours, which is equivalent

to over 15 days at 12 hours per day.  (Dkt. 423-1 at 5.)  Out of those 190 hours, Mr.

Marra purportedly spent over 110 hours, offering little detail for his work other

than "working on the privilege log," which, as described above, contains minimal

details and largely contains entries for improperly withheld documents. These hours also include "work[ing] on subpoena responses," "Responses to NYM's Requests for Production" and calls and/or emails with Mr. Mickelson regarding the privilege log and the document production. (Dkt. 423-1 at 5-6.) As the Court is aware, the Marra firm's "responses" to New York Marine's subpoenas consist of objections and attempting to find ways not to comply. The costs for a senior partner like Mr. Marra to seek advice from counsel regarding preparing a privilege log (when Mr. Marra has litigated cases for over 38 years), especially one that lacks the detail to assess the privilege *and* that required considerably more time than necessary due to the large number of improperly withheld documents, are not reasonably incurred. In any case, the Proof of Costs shows that Mr. Marra is the only individual who worked on the privilege log. There is no logical reason that a senior lawyer at Mr. Marra's billing rate should have prepared a privilege log.

Next, the Marra firm seeks to recoup costs for its decision to have a paralegal purportedly spend 72 hours "printing electronically stored documents for privilege review," "production of electronic file," and "work on document production" at $90 per hour (Dkt. 423-1 at 1-5) for work that appears to be duplicative of the over 31,000 pages of documents scanned and Bates numbered by Licini Print Shop (Dkt. 423-1 at 8-13) for which they are also seeking reimbursement. A client would not pay a law firm to use billable personnel for

such a clerical task, much less tasks that are duplicative, and the Court should similarly deny this unreasonable request. *See, e.g.*, *Siltronic Corp. v. Emplrs. Ins. Co.*, 2014 U.S. Dist. LEXIS 32633, at *7-8 (D. Or. Mar. 13, 2014) ("A minimum charge of $65.00 per hour to search and copy documents is inherently unreasonable and cannot be justified .... Moreover, at those hourly rates, the charges by [the nonparty] necessarily include some profit which [the party] should not have to pay"); *see also Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or.*, 2018 U.S. Dist. LEXIS 58729, at *22-23 (E.D.N.Y. Mar. 31, 2018) (nonparty barred from recouping "24 paralegal hours spent copying the emails and creating the pdfs" where the nonparty failed to "explore a more efficient and economical approach for the production").

Furthermore, considering the sparse production to date in response to the subpoenas and the prior representation to the Court at the September 10 hearing that the universe of documents that had to be searched for responsive documents consisted of a total of eight (8) boxes of documents and an electronic file, the amount of time claimed by the Marra firm to produce the documents is demonstrably excessive.  Certainly, the Marra firm has not met its burden to demonstrate that the expenses are reasonable and resulted from compliance with the Court's order.  *See Legal Voice*, 738 F.3d at 1184.  The Marra firm also seeks to recover fees for two attorneys to "deliver [the] privilege log" and "transport

documents to [the] court and NYM counsel per [the] Court's Order" at the rate of $210 per hour for two hours. (*See* Dkt. 423-1 at 5.) It is difficult to understand how it could take one hour to "deliver" the privilege log, since the log was filed with the Court and was electronically served on New York Marine. Furthermore, using attorneys for delivery services is unreasonable (at best) in the context of a cost-shifting analysis when other employees or delivery services may be used. [1]

Finally, the Proof of Costs includes a "previous balance" of $7,496.00, but does not describe the source of this sum or any other evidence demonstrating compliance with a Court order. (Dkt. 423-1 at 1.) The Court should deny requests for unsubstantiated fees under the cost-shifting analysis. *Hyundai Motor Am., Inc.*, 2016 U.S. Dist. LEXIS 184742, at *3 (denying cost-shifting motion, in part, because the nonparty made "almost no factual showing in support of its request . . . and so the Court has no way of knowing whether they were reasonably incurred").

The Marra firm attached two invoices to its reply brief for its motion to quash the subpoenas. (Dkt. 351.) New York Marine paid the first invoice for $5,577.20 on March 11, 2016. (Dkt. 351-2.) The Marra firm did not provide the second invoice to New York Marine, which was for $6,636.00, until it filed the reply. (Dkt. 351-3.) Notwithstanding the fact that the second invoice fails to

---

[1] Even if the documents had to be hand delivered, the Marra firm's offices are located in the same building and across the hall from New York Marine's counsel. It is unbelievable that such delivery would take an hour even if it had been made.

account for the purported previous balance of $7,496.00, the Court should not shift any of the requested costs purportedly incurred by the Marra firm relating to its deficient production and unacceptable privilege log for the several reasons discussed above.

### III.   CONCLUSION

New York Marine should not have to bear any of the Marra firm's requested costs and fees because cost-shifting under Rule 45 is not allowed where the non-party has not complied with the subpoenas or the Court's order.  In any event, the Marra firm is not really a disinterested third party here; it is counsel for one of the defendants in the case and has a vested interest in the outcome of the litigation. Moreover, notwithstanding the Marra firm's non-compliance, the requested expenses are not significant relative to the Marra firm's interest in the outcome of this matter, its ability to bear the costs itself or compared to the costs and fees it has forced New York Marine to incur attempting to get Mssrs. Marra and Evenson to comply with its subpoenas.  This is especially true when considering the balance remaining after removing the unsubstantiated previous balance, fees that JCCS incurred, the unnecessarily expensive personnel assigned to each task and the unreasonably excessive time purportedly spent in producing documents that essentially amount to pleadings and discovery and an incomplete privilege log.

The Court should deny the request to apportion fees and should force the Marra firm to bear the expense of finally complying with subpoenas served years ago.

Dated: December 19, 2019         UGRIN ALEXANDER ZADICK, P.C.

By:  /s/Gary M. Zadick
      Gary M. Zadick
      Jordan Y. Crosby
      Attorneys for Plaintiff and Third-Party Defendant NEW YORK MARINE AND GENERAL INSURANCE COMPANY

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies this brief complies with LR 7.1(d)(2)(E).  This brief contains 3457 words, excluding the caption, tables of contents and authorities, and certificate of compliance.  The word count function of the word-processing system used to prepare this brief was relied up on in this calculation.

Dated:  December 19, 2019                UGRIN ALEXANDER ZADICK, P.C.

By:   /s/Gary M. Zadick
        Gary M. Zadick
        Jordan Y. Crosby
        Attorneys for Plaintiff and Third-Party Defendant NEW YORK MARINE AND GENERAL INSURANCE COMPANY